**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERTAN BARUCIC,<br><br>Plaintiff,<br><br>vs.<br><br>CARRIZO OIL & GAS, INC., STEVEN A. WEBSTER, S.P. JOHNSON IV, F. GARDNER PARKER, FRANCES ALDRICH SEVILLA-SACASA, JR., ROBERT F. FULTON, ROGER A. RAMSEY, FRANK A. WOJTEK, and THOMAS L. CARTER,<br><br>Defendants. | **Civil Action No: 1:19-cv-08185**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Ertan Barucic ("Plaintiff"), by his undersigned attorneys, for his complaint against Defendants (defined below), alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Carrizo Oil & Gas, Inc. ("Carrizo Oil" or the "Company") and the members of the Company's board of directors (the "Board" or the "Individual Defendants," and, together with Carrizo Oil, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger of Callon Petroleum Company ("Callon") with Carrizo Oil.

2. On July 14, 2019, Carrizo Oil and Callon entered into an Agreement and Plan of

Merger (the "Merger Agreement"), providing for Callon's acquisition of Carrizo Oil, pursuant to a merger between Callon and Carrizo Oil, with Callon as the surviving corporation (the "Proposed Transaction").

3. If the merger is completed, each issued and outstanding share of Carrizo Oil common stock will convert into the right to receive 2.05 shares of Callon common stock (the "exchange ratio"), with cash paid in lieu of the issuance of fractional shares, if any. Although the number of shares of Callon common stock that Carrizo Oil shareholders will receive is fixed, the market value of the merger consideration will fluctuate with the market price of Callon common stock and will not be known at the time Carrizo Oil shareholders vote to approve the merger agreement or at the time Callon shareholders vote to approve the Callon shareholder proposals. Based on the closing price of Callon common stock on the New York Stock Exchange ("NYSE") on July 12, 2019, the last trading day before the public announcement of the parties entering into the merger agreement, the 2.05 exchange ratio represented approximately $13.12 in value for each share of Carrizo Oil common stock.

4. On August 20, 2019, in order to convince Carrizo Oil's public common shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. The Proxy contains materially incomplete and misleading information regarding: (i) the financial projections for Carrizo Oil and Callon; and (ii) the key inputs for the financial analyses performed by RBC Capital Markets, LLC ("RBCCM and Lazard Frères & Co. ("Lazard") to support their fairness opinions

6. Further, the Proxy discloses that the Company entered into non-disclosure

agreements with Parties A, B, C, D, E, F, G, and H. The Proxy fails to disclose whether these non-disclosure agreements (or any other non-disclosure agreements or similar agreements in effect) contain "don't-ask-don't waive" ("DADW") standstill provisions that are currently precluding any of these 8 or more interested parties from making a topping bid for the Company.

7. Additionally, although the Proxy does not yet set the date for the special meeting of Carrizo Oil's shareholders to vote on the Proposed Transaction (the "Stockholder Vote"), the Proxy does state the merger parties' intention to conclude this merger during the fourth quarter of 2019. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Carrizo Oil's shareholders can properly exercise their corporate suffrage rights.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because each Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (i) the conduct at issue will have an effect in this District; (ii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (iii) certain Defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

### Plaintiff

11. Plaintiff Ertan Barucic is, and at all relevant times, has been a Carrizo Oil stockholder. Plaintiff holds 12,236 Carrizo Oil shares.

### Defendants

12. Defendant Carrizo Oil is a Texas corporation that maintains its principal place of business at 500 Dallas Street, Suite 2300, Houston, Texas 77002. Carrizo Oil's stock is traded on NASDAQ under the ticker symbol "CRZO."

13. ***Defendant Steven A. Webster*** ("Webster") is, and has been at all relevant times, a director of the Company and Chairman of the Board.

14. ***Defendant S.P. Johnson IV*** ("Johnson") is, and has been at all relevant times, a director, President and Chief Executive Officer ("CEO") of the Company.

15. ***Defendant Frances Aldrich Sevilla-Sacasa*** ("***Sevilla-Sacasa***") is, and has been at all relevant times, a director of the Company.

16. ***Defendant Robert F. Fulton*** ("Fulton") is, and has been at all relevant times, a director of the Company.

17. ***Defendant Roger A. Ramsey*** ("Ramsey) is, and has been at all relevant times, a director of the Company.

18. ***Defendant Frank A. Wojtek*** ("Wojtek") is, and has been at all relevant times, a director of the Company.

19. ***Defendant Thomas L. Carter, Jr.*** ("Carter") is, and has been at all relevant times,

a director of the Company.

20. ***Defendant F. Gardner Parker*** ("Parker") is, and has been at all relevant times, a director of the Company.

21. The defendants identified in paragraphs 13 through 20 above are collectively referred to herein as "Individual Defendants."

22. The Individual Defendants and Carrizo Oil are herein referred to collectively as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

23. On July 15, 2019, the Company and Callon jointly issued a press release announcing the Proposed Transaction. The joint press release stated in relevant part:

> **Callon to Acquire Carrizo in All-Stock Transaction**
>
> **Creates a Premier Oil-Weighted Mid-Cap with Peer-Leading Capital Efficiency and Cash Materially Increases Scale with Over 100,000 Boe/d of Pro-Forma 1Q19 Production and 200,000 Net Acres in the Prolific Permian Basin and Eagle Ford Shale**
>
> **Highly Complementary Delaware Basin Footprint of Over 90,000 Net Acres to Accelerate Scaled Operations and Leverage Shared Infrastructure to Unlock Additional Value**
>
> **Immediately Accretive to EPS, CFPS, Debt-Adjusted Growth**
>
> **Per Share and Net Asset Value Per Share; Double-Digit Production Growth and Over $100 Million of Free Cash Flow in 2020 at Current Strip Pricing**
>
> **Stock-for-Stock Transaction Maintains Strong Balance Sheet and Flexibility to Execute Full-Field, Large-Scale Pad Development**
>
> **Expects to Realize Primary Annual Run-Rate Synergies of $100 - $125 Million in Addition to Optimized Capital Allocation Over Time Companies to Host Investor Conference Call Today at 8:30 a.m. ET / 7:30 a.m. CT**
>
> Callon Petroleum Company (NYSE: CPE) and Carrizo Oil & Gas, Inc. (Nasdaq: CRZO) today announced that their Boards of Directors have unanimously approved a definitive agreement under which Callon will acquire Carrizo in an all-stock transaction valued at $3.2 billion. This highly complementary combination will

create a leading oil and gas company with scaled development operations across a portfolio of core oil-weighted assets in both the Permian Basin and Eagle Ford Shale.

Under the terms of the agreement, Carrizo shareholders will receive a fixed exchange ratio of 2.05 Callon shares for each share of Carrizo common stock they own. This represents $13.12 per Carrizo share based on Callon's closing common stock price on July 12 and a premium of 18% to Carrizo's trailing 60-day volume weighted average price. Following the close of the transaction, Callon shareholders will own approximately 54% of the combined company, and Carrizo shareholders will own approximately 46%, on a fully diluted basis. The all-stock transaction is intended to be tax-free to Carrizo shareholders.

"We are excited about this transformational transaction, creating a differentiated oil and gas company by integrating core asset bases in premier basins. Together with Carrizo, we will accelerate our free cash flow, capital efficiency and deleveraging goals through an optimized model of large-scale development across the portfolio. We will also benefit from leading cash margins to navigate commodity price volatility and allow for reliable, continuous development of the combined asset base. With a deep inventory of high rate-of-return well locations in well-established areas and substantial upside opportunities for organic inventory delineation, we will be able drive differentiated growth deploying our life-of-field development model for many years to come," said Joe Gatto, President and Chief Executive Officer of Callon. "As a larger organization, Callon will be well-positioned to benefit from an expanded infrastructure footprint and critical mass for our production marketing and supply chain functions and also leverage our technology and data capture initiatives across a broader base. Importantly, this combination brings together two organizations grounded in strong values and a shared commitment to responsible operations, integrity, and a drive to deliver leading results. We look forward to welcoming Carrizo's employees and joining forces as a Houston-based company focused on the development of a premier Texas asset base to create enhanced value for all of our stakeholders."

S.P. "Chip" Johnson, IV, President and Chief Executive Officer of Carrizo, commented, "We believe that Callon is the ideal partner for Carrizo. Through our combination, we bring together a strong foundation of Midland Basin and Eagle Ford Shale assets and overlay a substantial Delaware acreage position and value proposition that will be unlocked through an integrated plan of large-scale program development. This all-stock transaction provides Carrizo shareholders with the opportunity to participate in the significant near- and long-term upside potential of the merged company. We look forward to a bright future for our employees and all of our stakeholders and expect a seamless integration."

## THE MATERIALLY INCOMPLETE AND MISLEADING PROXY

24. On August 20, 2019, Defendants filed an incomplete and misleading Proxy with

the SEC and disseminated it to the Company's shareholders. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.

25. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.

26. The Proxy fails to provide sufficient information concerning the financial projections for Carrizo Oil. For example, the Proxy fails to provide sufficient information concerning both companies unlevered free cash flows and/or after-tax free cash flows and its line items; (ii) all line items used to calculate Carrizo Oil's Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics. Moreover, the Proxy omits material information regarding RBCCM and Lazard's financial analyses.

27. Regarding RBCCM's Discounted Cash Flow Analysis (the "DCF") for both companies, the Proxy does not provide company shareholders with the reviewed historical weighted average cost of capital ("WACC") for both companies and the selected companies observed to derive a discount rate of 9.5% to 11.5% and 9.0% to 11.0%, as well as the basis for selecting terminal multiples ranging from 3.00 x to 4.00x 2023E Adjusted EBITDA for Carrizo Oil and terminal multiples ranging from 3.75x to 4.75x 2023E Adjusted EBITDA terminal value for Callon.

28. In addition, RBCCM's DCF analysis is based on unlevered free cash flows of Carrizo Oil and after-tax free cash flows of Callon, but yet the cash flows used are not found in the Proxy.

29. Regarding the Net Asset Value Analyses for both companies, the Proxy fails to provide the basis for using the same discount rate used in the DCF, although it was based only

on Carrizo Oil and Callon's WACC as supposed to also based on the selected companies observed and considered in the DCF.

30. Regarding RBCCM's Analysts' Price Targets for both companies, the Proxy does not disclose the critical price targets for either company or the sources thereof or whether the same analysts provided price targets for the two companies.

31. Regarding Lazard's Net Asset Value Analyses (NAV), the Proxy fails to disclose the "risk factors based on oil and gas reserve categories" that Lazard applied in reaching its conclusions.

32. In addition, the Proxy discloses that the Company entered into non-disclosure agreements with, at least, Parties A, B, C, D, E, F, G, and H. The Proxy fails to disclose whether these non-disclosure agreements (or any other non-disclosure agreements or similar agreements in effect) contain "don't-ask-don't waive" ("DADW") standstill provisions that are currently precluding any of these 8 or more interested parties from making a topping bid for the Company.

33. Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with shareholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy with the intention of soliciting the support of shareholders for the Proposed Transaction. Upon information and belief, each Defendant reviewed and authorized the dissemination of the Proxy, which fails to provide critical information detailed above.

38. In so doing, Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles in the Proposed Transaction, was aware of the omitted material information but failed to disclose such information, in violation of Section 14(a). Defendants therefore had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

39. The Proxy is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the

Proposed Merger.

40. Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41. Defendants violated the securities laws in preparing and reviewing the Proxy. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact violates securities laws. Defendants and the Individual Defendants chose to omit material information from the Proxy or failed to notice the material omissions in the Proxy upon reviewing it, which the Individual Defendants were required to do in their roles as officers and directors of the Company.

42. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Company's other shareholders, each of whom will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

43. Plaintiff and the Company's other shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT)**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

45. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48. In addition, as set forth in the Proxy sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or

gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(A) declaring that the Proxy is materially false and/or misleading;

(B) enjoining, preliminarily and permanently, the Proposed Transaction until the Proxy is cured;

(C) in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D) directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(E) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F) granting Plaintiff such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 3, 2019

**GAINEY McKENNA & EGLESTON**

By: */s/ Thomas J. McKenna*
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

**MOORE KUEHN, PLLC**
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, NY 10005
Telephone: (212) 709-8245
Email: jkuehn@moorekuehn.com
Email: fmoore@moorekuehn.com

***Attorneys for Plaintiff***